UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY CRAFTON,<br><br>    Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>    Defendant. | NO. CV 08-8052 AGR<br><br><br>MEMORANDUM OPINION AND ORDER |

    Mary Crafton filed this action on December 8, 2008. Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before Magistrate Judge Rosenberg on February 25 and 27, 2009. (Dkt. Nos. 6-7.) On July 15, 2009, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues. (Dkt. No. 13.) The Court has taken the matter under submission without oral argument.

    Having reviewed the entire file, the Court affirms the decision of the Commissioner.

///

///

///

# I.
# PROCEDURAL BACKGROUND

On October 12, 2005, Crafton filed an application for disability insurance benefits alleging an onset date of November 21, 2002. Administrative Record ("AR") 12. The application was denied initially. *Id.* An Administrative Law Judge ("ALJ") conducted a hearing on October 24, 2007, at which Crafton, a medical expert ("ME"), and a vocational expert ("VE") testified. AR 19-49. On November 8, 2007, the ALJ issued a decision denying benefits. AR 9-18. Crafton requested review. AR 6. On October 9, 2008, the Appeals Council denied Crafton's request for review. AR 1-4. This lawsuit followed.

# II.
# STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than one rational interpretation, the Court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

///

///

# III.

# DISCUSSION

### A. Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003).

### B. The ALJ's Findings

The ALJ found that Crafton met the insured status requirements through March 31, 2008. AR 14. At Step Two of the sequential analysis, the ALJ found that "[t]he objective medical evidence fails to establish the existence of a medically determinable impairment that could reasonably be expected to produce the claimant's symptoms." *Id.*

### C. Step Two Analysis

At Step Two of the sequential analysis, the claimant bears the burden of demonstrating a severe, medically determinable impairment that meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). To satisfy the duration requirement, the severe impairment must have lasted or be expected to last for a continuous period of not less than 12 months. *Id.* at 140.

> Your impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your

statement of symptoms. 20 C.F.R. § 404.1508; 20 C.F.R. § 416.908. "[T]he impairment must be one that 'significantly limits your physical or mental ability to do basic work activities.'"[1] *Yuckert*, 482 U.S. at 154 n.11 (quoting 20 C.F.R. § 404.1520(c)); *Smolen*, 80 F.3d at 1290 ("[A]n impairment is not severe if it does not significantly limit [the claimant's] physical ability to do basic work activities.") (citation and internal quotation marks omitted).[2]

In a report dated May 12, 2006, an examining physician stated Crafton told him that her symptoms started when a briefcase dropped on her left foot on October 27, 1995, and that she was told she has nerve damage in that foot. The examining physician did not make an independent diagnosis.[3] AR 131, 134. An examining physician's reiteration of a claimant's statements is insufficient to establish the existence of a medically determinable impairment. *Ukolov v. Barnhart*, 420 F.3d 1002, 1005-06 (9th Cir. 2005). Crafton's argument that the examining physician diagnosed a medically determinable impairment is rejected. JS 10-11, 13.

Subsequently, on October 31, 2006, Crafton submitted a Multiple

---

[1] The ability to do basic work activities includes "physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling," "capacities for seeing, hearing, and speaking," "understanding, carrying out, and remembering simple instructions," "use of judgment," "responding appropriately to supervision, co-workers, and usual work situations," and "dealing with changes in a routine work setting." *Yuckert*, 482 U.S. at 168 n.6 (internal quotations omitted); *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

[2] If a medically determinable impairment is found, the "impairment or combination of impairments may be found 'not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'" *Webb v. Barnhart*, 433 F.3d 683, 686-87 (9th Cir. 2005) (emphasis in original, citation omitted). That finding must be "'clearly established by medical evidence.'" *Id.* at 687 (citations and quotation marks omitted).

[3] The examining physician opined that Crafton is capable of medium work, with unlimited sitting and walking/standing for two hours out of an 8-hour workday. AR 134. Crafton was restricted only from "agility activities." *Id.*

4

Impairment Questionnaire from Dr. Jurkowitz, a treating physician. AR 136. Dr. Jurkowitz states that he first treated Crafton on June 26, 1998, and his most recent examination occurred on September 15, 2006. AR 137. He diagnosed severe neuralgia in left lower extremity and complex regional pain syndrome. *Id.* Dr. Jurkowitz relied on a June 30, 1998 nerve conduction study which was "somewhat suggestive of a mild polyneuropathy such as can be seen with diabetes, hypothyroidism and various other conditions." AR 137, 179. Dr. Jurkowitz's report dated June 30, 1998 stated that the mild polyneuropathy "is probably subclinical." AR 175. On September 7, 2007, Dr. Jurkowitz submitted another Multiple Impairment Questionnaire. AR 181.

At the hearing on October 24, 2007, the ME testified that there is not sufficient medical evidence to establish the existence of a medically determinable impairment. AR 25. He stated that Dr. Jurkowitz did not do enough of an evaluation to support a diagnosis of complex regional pain syndrome. *Id.* Dr. Jurkowitz did not do tests that are commonly done. AR 31. The 1998 nerve conduction study was not clinically significant because Crafton had only mild abnormality, and more than mild abnormality is required before a patient experiences symptoms. AR 26. Dr. Jurkowitz interpreted the results as a subclinical abnormality. AR 26, 31-32.

On November 19, 2007, after the hearing and ALJ decision, Crafton submitted a response by Dr. Jurkowitz dated October 31, 2007. AR 189. Dr. Jurkowitz disagreed with the ME's opinion and stated that "a very mild neuropathy such as can be seen in diabetes on nerve conduction tests, may be associated with a severe neuralgia."[4] AR 190.

The ME also testified that neuralgia is a synonym for pain and did not

---

[4] The Appeals Council considered the new evidence and concluded that the information did not provide a basis for changing the ALJ's decision. AR 2, 4. Given that the Appeals Council considered the new evidence, this Court also considers it. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1030 n.2 (9th Cir. 2007).

5

consider it a separate diagnosis absent an indication of which nerve has the neuralgia. AR 27. As the ALJ noted, Dr. Jurkowitz's report on June 30, 1998 explained that he used "neuralgia to mean any nerve pain but it is the same thing. In this case, it is complex regional pain syndrome, which indicates specifically a type of neuralgia due to a partial nerve injury." AR 176. Accordingly, it appears Dr. Jurkowitz did not treat the diagnosis of neuralgia as distinct from the diagnosis of complex regional pain syndrome.[5] In his October 31, 2007 response to the ME, Dr. Jurkowitz again defined neuralgia as "nerve pain." AR 190.

The ALJ found that "there is no objective medical evidence that the claimant has a medically determinable neurological impairment." AR 17.

> The record only contains the claimant's subjective complaints of pain, i.e., neuralgia, but there are no objective test results or objective findings supporting the allegations of pain. First, the electrodiagnostic studies in Exhibit 3F/33 contain results of subclinical significance according to the medical expert and Dr. Jurkowitz who performed the tests.

*Id.* The ALJ found that Dr. Jurkowitz and the examining physician accepted Crafton's subjective complaints without conducting "clinically significant testing to substantiate the pain allegations." *Id.*

Crafton argues that the ALJ erred in relying exclusively on the ME's testimony, which does not constitute substantial evidence when unsupported by other evidence in the record. JS 7, 13. This argument is not well taken. The ALJ noted that Dr. Jurkowitz interpreted the nerve conduction studies as being of subclinical significance. AR 17, 175. The ME cited Dr. Jurkowitz's interpretation of the results in support of his own opinion. AR 26. Thus, Crafton's argument

---

[5] Crafton disagrees with the ME's criticism of Dr. Jurkowitz's diagnosis of neuralgia. As Crafton concedes, however, Dr. Jurkowitz "attributed her neuralgia to CRPS [complex regional pain syndrome]," and always attributed neuralgia to an underlying CPRS. JS 11.

6

that the ME's opinion was not based on independent medical evidence of record is incorrect. "[R]eports of the nonexamining advisor need not be discounted and may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it." *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995); *see also Batson v. Comm'r of the SSA*, 359 F.3d 1190, 1195 (9th Cir. 2004) (treating physician opinion "is not binding on an ALJ with respect to the existence of an impairment").

Crafton points to Dr. Jurkowitz's contrary opinion, offered after the hearing, that "a very mild neuropathy such as can be seen in diabetes on nerve conduction tests, may be associated with a severe neuralgia." AR 190. The ALJ is responsible for resolving ambiguities and conflicts in medical testimony, including any conflict in Dr. Jurkowitz's own reports. *Andrews*, 53 F.3d at 1039; *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) ("Where medical reports are inconclusive, 'questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary.'") (citation omitted). As noted above, a court must defer to the Commissioner when the evidence is susceptible to more than one rational interpretation. *See Moncada*, 60 F.3d at 523.

Crafton cites to internet articles that are outside the administrative record to argue that "[t]here is no objective test to confirm the presence of CRPS [complex regional pain syndrome]." JS 7-9, 11. Crafton further argues that her treating records contain the criteria identified by the internet articles she cites. JS 9. However, Crafton cites no authority for the proposition that this court may look outside of the administrative record in reviewing the Commissioner's decision.[6]

The ME testified that Dr. Jurkowitz should have ordered a radioactive bone scan and a sympathetic nerve block in order to investigate a diagnosis of

---

[6] To the extent Crafton seeks to introduce new evidence in this court, Crafton makes no "showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g).

7

complex regional pain syndrome.[7] AR 27. In response, Dr. Jurkowitz stated that these two tests are for RSD, reflex sympathetic dystrophy, which Dr. Jurkowitz contends is a separate condition that Crafton does not have. AR 190. Dr. Jurkowitz again relied on the nerve conduction study as objective evidence of neuropathy. (*Id.*) The ALJ properly addressed the nerve conduction study, as discussed above. Dr. Jurkowitz did not state there are no objective tests that can be performed to support a diagnosis of complex regional pain syndrome, the argument Crafton makes here. AR 190.

Social Security Ruling No. 03-2p treats Reflex Sympathetic Dystrophy Syndrome (RSDS) as synonymous with Complex Regional Pain Syndrome, Type I (CRPS).[8] As with other conditions,[9] "[d]isability may not be established on the basis of an individual's statement of symptoms alone." 2003 SSR LEXIS 2 at *11. Instead, complex regional pain syndrome "constitutes a medically determinable impairment when it is documented by appropriate medical signs, symptoms, and laboratory findings." *Id.* Signs and laboratory findings include swelling, autonomic instability, abnormal hair or nail growth, osteoporosis, or involuntary movements of the affected region of the initial injury.[10] *Id.* at *11-*12.

---

[7] Although Crafton characterizes the ME's testimony as medically unsound, a sympathetic nerve block has been used to diagnose and treat complex regional pain syndrome. *E.g., Garcia v. Astrue*, 2009 U.S. Dist. LEXIS 76320, at *13, *22 & n.6 (C.D. Cal. Aug. 25, 2009).

[8] Social Security Rulings (SSRs) do not carry the force of law, but do reflect the official interpretation of the Commissioner and "are entitled to 'some deference' as long as they are consistent with the Social Security Act and regulations." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1224 (9th Cir. 2009) (citations and internal quotation marks omitted).

[9] *See* 20 C.F.R. § 404.1528 ("Your statements alone are not enough to establish that there is a physical or mental impairment."); SSR 96-4p ("No symptom or combination of symptoms by itself can constitute a medically determinable impairment.").

[10] *E.g., Garcia*, 2009 U.S. Dist. LEXIS 76320, at *13, *16 (diagnosis of complex regional pain syndrome based on temperature, skin, and hair pattern changes, atrophy, and diminished reflexes)

8

By contrast, Dr. Jurkowitz did not base his diagnosis of complex regional pain syndrome on such signs. AR 137, 166, 181-82. Instead, Dr. Jurkowitz diagnosed complex regional pain syndrome based on Crafton's stated symptoms and the June 1998 nerve conduction study.[11] AR 147 ("Since the last examination, the patient states that the pain has not been under control."), 149 ("Since the last evaluation, the patient states that she is not doing any better in terms of her pain."), 151 ("Since the last examination, the patient states she is doing slightly better . . . ."), 153 ("today she says it has been so bad the last month or so that she could not even go to church"), AR 157 ("Since the last examination, the patient said she has not yet heard about her appeal with the Department of Social Services. Her pain is basically unchanged since the last visit."), 159, 161 ("[o]verall, she feels that her pain is worse"), 160 ("my report of December 5, 2005 merely discusses the pain situation the patient was still in, and I gave no conclusions or interpretations"), 162 (Since the last examination she states that her pain suddenly got much worse."). *See Ukolov*, 420 F.3d at 1005-06 (treating physician's restatements of a patient's symptoms "fell far short of what is required to establish an impairment").

The ALJ's finding that the objective medical evidence did not establish a medically determinable impairment is supported by substantial evidence.

**D.  Credibility**

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).

First, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably

---

[11] The one exception after the alleged onset date is a record dated December 3, 2002, in which Dr. Jurkowitz noted swelling and tenderness of the left foot that started after a bad reaction to Vicodin. AR 168.

9

be expected to produce the pain or other symptoms alleged.'" *Id.* (citations omitted).

As discussed above, the ALJ found no objective medical evidence of a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. AR 14. However, the ALJ did consider Crafton's subjective testimony. When there is no evidence of malingering,[12] "'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (citations omitted). "In making a credibility determination, the ALJ 'must specifically identify what testimony is credible and what testimony undermines the claimant's complaints.'" *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (citation omitted). "If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Thomas*, 278 F.3d at 959; *Morgan v. Commissioner of the Social Security Administration*, 169 F.3d 595, 600 (9th Cir. 1999).

The ALJ considered Crafton's testimony that: (1) she took early retirement in 2002 because her employer downsized; (2) she volunteers at her church feeding the homeless and giving out clothing for four days per week, four hours per day; and (3) she drives, dusts, cleans up, does laundry, and goes food shopping. AR 15, 17, 35-36. By contrast, the ALJ noted that in response to her counsel's questions, Crafton testified that her pain is 9 out of 10, she could barely walk when she took early retirement, she can stand no more than one hour total in an 8-hour day, and can sit no more than one hour total in an 8-hour day. AR 15, 37-40. As the ALJ also noted, Dr. Jurkowitz found a pain level of 9 out of 10, an ability to sit less than 1 hour in an 8-hour day, and an ability to stand/walk less than 1 hour in a 8-hour day. AR 16, 139, 183.

---

[12] The ALJ did not find that Crafton was malingering.

An ALJ may properly consider inconsistencies or discrepancies in a claimant's statements, and inconsistencies between a claimant's statements and her activities. *Thomas*, 278 F.3d at 958-59. There are clear inconsistencies between Crafton's volunteer and other activities, and her stated inability to sit or stand more than a total of one hour per day. Crafton does not attempt to explain these inconsistencies. In addition, in response to the ALJ's question, Crafton testified that she took early retirement and not a disability retirement in 2002. AR 34-35. The ALJ's credibility assessment is supported by substantial evidence. *See Carmickle v. Comm'r, SSA*, 533 F.3d 1155, 1162 (9th Cir. 2008). The inconsistencies are significant in this case given the lack of objective medical evidence of a medically determinable impairment and the treating physician's reliance on Crafton's subjective symptoms.

## IV.

## **ORDER**

IT IS HEREBY ORDERED that the decision of the Commissioner is affirmed.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: October 7, 2009

ALICIA G. ROSENBERG
United States Magistrate Judge